1.IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SERGIO E. ALAMIA,
        Petitioner,

vs.                                            Case No.:  3:15cv21/MCR/EMT

JULIE L. JONES,
        Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (ECF No. 1).  Respondent filed an answer and relevant portions of the state court record (ECF No. 20).  Petitioner filed a reply (ECF No. 24).  He also filed a "Motion to Accept Exhibit 'A' to Petitioner's Response to Respondent's Answer in Response to Order to Show Cause, and Petitioner's Request for Evidentiary Hearing as Timely Filed" (ECF No. 26).  Respondent filed a "Motion to Strike Petitioner's Reply and Attached Exhibits" (ECF No. 27).  Petitioner responded in opposition to the motion to strike (ECF No. 29).  Petitioner then filed a "Motion to Expand the Record and Request for Evidentiary Hearing," requesting that the court expand the record to include the same exhibits he submitted with his reply, and also requesting that the court hold an evidentiary hearing on his claims (ECF No. 30).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2011-CF-2337, with one count of DUI manslaughter (Count 1) and one count of DUI damage to property (Count 2) (Ex. A at 5–6).[1] Following a jury trial, Petitioner was found guilty as charged (*id.*). On July 19, 2012, the court adjudicated Petitioner guilty and sentenced him on Count 1 to thirteen years in prison, with a four-year minimum mandatory, followed by a period of two years of probation (*id.* at 217–87, 460–66). The court sentenced him on Count 2 to one year of probation

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (ECF No. 20). If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

(*id.*).  Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D12-3981 (*see* Exs. C, D, E).  On January 23, 2014, the First DCA affirmed the judgment per curiam without written opinion (Ex. F).  <u>Alamia v. State</u>, 130 So. 3d 229 (Fla. 1st DCA 2014) (Table).  The mandate issued February 10, 2014 (Ex. G).

Petitioner, through counsel, filed the instant federal habeas action on January 21, 2015 (ECF No. 1).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from

---

[2] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73

(quoting <u>Williams</u>, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (quoting <u>Williams</u>, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.  Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See* <u>Henderson v. Campbell</u>, 353 F.3d 880, 890 n.15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  <u>Williams</u>, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light

of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'"  Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* Gill, *supra* at 1291 (citing

Richter).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* Richter, 562 U.S. at 102; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."   28 U.S.C. § 2254(e)(1); *see, e.g.,* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").   The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and

§ 2254(d), does the court take the final step of conducting an independent review of

the merits of the petitioner's claims.  *See* <u>Panetti v. Quarterman</u>, 531 U.S. 930, 953,

127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007); <u>Jones</u>, 469 F.3d 1216 (same).  The writ

will not issue unless the petitioner shows that he is in custody "in violation of the

Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.    PETITIONER'S CLAIMS

      <u>Ground One:  "Failure of the Court to appoint counsel for Defendant who could
not afford to hire an attorney for his homicide trial."</u>

      <u>Ground Two:   "Failure of the Court to conduct adequate inquiry into
Defendant's financial ability to hire a lawyer or otherwise present an adequate
defense in a homicide trial."</u>

Petitioner alleges the following facts in support of his claims:

      Mr. Alamia is a retired, disabled career Marine with no prior
criminal history.  He has a military pension and VA disability rating.  At
the time he was arrested he lived in the same residence as his wife, two
of their grown children and their grandchildren.  The children had fallen
on hard times and Alamia was helping them get back on their feet by
supporting them and supporting his minor grandchildren.

      Alamia originally obtained an attorney for a small initial retainer.
That lawyer was allowed to withdraw by the trial court because, as the
lawyer advised the trial court, Alamia was unable to raise the money pay
him any further.  Alamia talked to at least four lawyers trying to find

counsel he could afford.  The Prosecutor even advised the trial court that she was aware that Mr. Alamia was interviewing private lawyers in effort to hire someone.  Alamia related to the trial court that he could not assemble the fifteen to twenty thousand dollar retainer it would require to hire a lawyer for a DUI homicide case.

On every one of the occasions that Alamia was before the trial court, he reiterated that he did not want to represent himself, but was unable to afford counsel.  He always maintained he wanted a public defender.

The trial court, in the record acknowledged that DUI homicide cases have certain technical aspects that make it difficult to represent oneself.  The trial court never addressed the issue that, in addition to paying an attorney, Alamia would have also needed to pay to retain certain experts to address the Prosecution's experts and to advance the theories of defense that a qualified attorney would have advanced for Alamia had one been afforded to him.

Alamia and his wife had accumulated a staggering amount of consumer debt that the trial court never adequately inquired about.  The record indicates that the Court was made aware that Alamia had incorrectly filled out portions of his Financial Affidavit and appears never to have clarified those inaccuracies on the record.

Though he tried, Alamia was unable to secure a loan for a retainer to hire an attorney.  He had no collateral to put up for a loan or to sell to raise money for his defense.

Alamia had three cars, but owned none of them to sell to raise money.  They all had been financed.  And, ironically, one of the cars for which he had to make a note had been impounded as evidence in the vehicular homicide case.  The record reflects he had no assets to liquidate and did not own any real property, stocks bonds [sic] and had a very small savings of approximately $800 to $1000.00.

Mr. Alamia did not conduct voir dire, present an opening statement, [or] conduct meaningful cross examinations, [and] he did not testify or present a closing argument.  The record reflects that the breath test[s] given to Alamia at the jail on the night of the accident indicate his blood alcohol were within the legal limit.  The breath tests were .066 and .065, under the .08 limit.  Because his breath tests were within legal limits, Alamia was released from the jail that night and not charged with homicide the night of the accident.  In fairness, his blood sample a1cohol levels eventually came back higher than the breath test results, .100 and .101, slightly above the legal limit.  Mr. Alamia had no idea what to do with this very helpful information in regards to arguing the disparity in the evidence testing to the jury.  Additionally, the deceased pedestrian had a significant blood alcohol content, another issue with which Alamia had no idea how to address with the jury.  The testimony was that Mr. Alamia hit the pedestrian and the pedestrian was thrown into a lane of oncoming traffic.  The pedestrian was then hit a second time by another (not Alamia's) oncoming car, presenting an unaddressed question of which car's hit actually killed the deceased.  This was a defensible case in the hands of a competent trial attorney.

The record indicates that the trial judge had Alamia in front of him on ten different occasions before the trial inquiring if he had been able to hire an attorney or not.  Not until the 10th and last time Alamia was in front of the trial judge did the judge conduct a more in-depth inquiry into the Alamia's financial condition.  Unfortunately for Alamia, this last inquiry was on May 3, 2012, just a few days before his trial was to start. The record will reveal that the court's inquiry was done at the urging of the prosecutor who presented case law to the court showing that the Court's previous financial inquiries were inadequate and not in line with Florida's case law.  Regardless, the final inquiry still did not adequately scrutinize Alamia's complete financial condition.

The trial court had been given by the prosecutor the cases showing a trial court how to make an evaluation of a person's indigence versus the seriousness of the case.  The court should have conducted a much more extensive hearing considering Alamia's full circumstances[,]

including[] weekly income, dependents, probable expense and burden of defending a DUI homicide case, amount of debt owed by Alamia, or debts that might have been incurred because of illness or other misfortunes of his family.  Some of these factors were considered, but the most significant were not.  Conspicuously omitted was an evaluation or estimate of the cost of defending a DUI homicide such as presented in this individual case.  The attorney's fee was only a part of the indigence equation.

Mr. Alamia was then tried in a day and convicted.  He was re-evaluated and considered indigent for the purposes of his appeal to the Florida Court of Appeals.

(ECF No. 1 at 5–6).[3]  Petitioner asserts he presented his claims to the state court on direct appeal of his conviction (*id.* at 8, 9).

Respondent contends Petitioner's first claim, that the trial court erred by failing to appoint counsel for him, is unexhausted, because Petitioner failed to properly present it to the trial court or the First DCA (ECF No. 20 at 6–10).  Specifically, Respondent argues that Petitioner took the position in the trial court that he could afford an attorney if given more time to find one; however, this position is contrary to the position Petitioner advances in his § 2254 petition (*id.*).  Respondent further argues that by representing to the trial court that he could afford an attorney if given more time to find one, Petitioner "invited" the trial court's alleged error (i.e., failure

---

[3] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

to appoint counsel) and thus waived review of the issue on direct appeal to the First DCA (*id.* at 9–10).  Additionally, Respondent argues that notwithstanding the failure to exhaust, Ground One is without merit (*id.* at 10–11).  Respondent argues that Petitioner failed to demonstrate that the trial court's factual determination that he was not indigent was unreasonable, in light of the evidence that was presented to the state court (*id.*).  Respondent contends that Petitioner's having failed to demonstrate that the state court's factual determination of non-indigency was unreasonable, he cannot demonstrate that the court's failure to appoint counsel was contrary to or an unreasonable application of <u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963) (*id.*).

Respondent contends that with regard to Petitioner's second claim, that the state court failed to conduct an adequate inquiry into his financial ability to hire counsel, the claim is not cognizable on federal habeas, because there is no Supreme Court holding that sets forth the procedure that a state court must follow in determining whether a criminal defendant is indigent (ECF No. 20 at 12–13).  Respondent argues that Petitioner cannot demonstrate that the state court's rejection of Ground Two was an unreasonable application of clearly established federal law, because no such law exists (*id.*).

In his reply, Petitioner contends that <u>Gideon</u> clearly establishes that he had a federal constitutional right to appointed counsel, because he could not afford to hire an attorney (ECF No. 24 at 1–6, 7–9, 12).  Petitioner contends that the state court's determination that he could afford to hire counsel was based upon an insufficient inquiry into Petitioner's financial status at the time of trial, and an insufficient assessment of the complexity of the case (*id.*).  Petitioner presents new evidence (i.e., evidence that was not presented in state court) of his financial status and of the cost of defending a case of the nature and complexity as his, and he requests an evidentiary hearing to fully develop the evidence supporting his claims (ECF Nos. 24, 26, Exs. A, B).

With regard to the exhaustion issue, Petitioner contends he fairly presented his Sixth Amendment claim on direct appeal, and cited <u>Gideon v. Wainwright</u> in support (ECF No. 24 at 6–7, 9–12).  Petitioner further contends that he did not waive the issue in the trial court; he contends he repeatedly informed the trial court that he did not wish to go to trial without an attorney, but that he could not afford to hire one (*id.* at 9–12).

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C.

§ 2254(b)(1),[4] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

A claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  Picard, 404 U.S. at 277.  If state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms

---

[4] Section 2254 provides, in pertinent part:

(b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
    (A)  the applicant has exhausted the remedies available in the courts of the State; or
      (B) (i)  there is an absence of available State corrective process; or
        (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

of the applicable federal right in state court in order to obtain federal review of the issue.[5]  <u>Duncan v. Henry</u>, 513 U.S. 364, 366, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995).  "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  <u>Baldwin v. Reese</u>, 541 U.S. 27, 32, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004).

On direct appeal of his conviction, Petitioner argued that the trial court erred in compelling him to proceed to trial without an attorney based on an inadequate inquiry into Petitioner's financial situation, and despite Petitioner's repeated requests for the assistance of counsel (Ex. C at 21–28).  Petitioner argued that the right to counsel was protected by the Florida Constitution, state statutory law, and the state rules of criminal procedure (*id.* at 21).  In support of his argument that the trial court had not fully discharged its responsibility in inquiring whether counsel could be appointed for him, Petitioner relied heavily upon <u>Enrique v. State</u>, 408 So. 2d 635 (Fla. 3d DCA 1981), in which the state appellate court held that the trial court denied

---

[5] The petitioner in <u>Duncan</u> raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

the defendant his federal constitutional right to counsel by failing to conduct a full and complete inquiry of the defendant's financial circumstances at every critical stage of the criminal proceeding.  408 So. 2d at 637–38 (citing Coleman v. Alabama, 399 U.S. 1 (1970), United States v. Wade, 388 U.S. 218 (1967), Argersinger v. Hamlin, 407 U.S. 25 (1972), Gideon v. Wainwright, 372 U.S. 335 (1972), and Wood v. United States, 389 U.S. 20 (1967)) (Ex. C at 24–26).

Petitioner additionally argued that the trial court failed to give him sufficient time to retain counsel (Ex. C at 27–28).  In support of this argument, he relied exclusively upon Stanojevich v. State, 567 So. 2d 37, 38 (Fla. 3d DCA 1990), in which the state appellate court held that the trial court violated the defendant's Sixth Amendment right to counsel, recognized by the Supreme Court in Gideon, by refusing to appoint counsel and forcing the defendant to proceed at trial pro se, despite the defendant's informing the court that he was unable to retain counsel due to a lack of sufficient funds, and his requesting a continuance of the trial date for the purpose of procuring counsel (id.).

The undersigned concludes that Petitioner fairly presented his Sixth Amendment claim to the First DCA on direct appeal.  Therefore, he satisfied the exhaustion requirement.

The First DCA rejected Petitioner's claim in a per curiam affirmance of the judgment of conviction, without written opinion (Ex. F).  This constituted an "adjudication on the merits" of Petitioner's claim.  Section § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been "adjudicated on the merits."  *See* <u>Richter</u>, 562 U.S. at 99.  When a state court issues an order that summarily rejects without discussion all the claims raised by a defendant, including a federal claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits in the absence of any indication or state-law procedural principles to the contrary.  *Id.*  The presumption may be overcome when there is a reason to think some other explanation for the state court's decision is more likely.  *Id.* at 99–100.  Here, there is no reason to think that the First DCA rejected Petitioner's claim on grounds other than the merits.  Therefore, the court presumes that the First DCA adjudicated Petitioner's Sixth Amendment claim on the merits.

As previously discussed, § 2254(d) provides that with respect to any claim that was adjudicated on the merits in state court, a habeas petition shall not be granted unless the adjudication of the claim:  (1)  resulted in a decision that was contrary to,

or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C.A. § 2254(d).

In Petitioner's reply and motion to expand the record, he requests that the court consider evidence which was not presented to the state court, specifically, evidence of Petitioner's financial condition during the course of the trial court proceedings, and evidence of the cost of defending a felony DUI manslaughter case like Petitioner's (*see* ECF Nos. 24, 26, 30).  Petitioner requests that the court not only consider the financial records and affidavit proffered with his reply, but that the court hold an evidentiary hearing to take additional evidence (*see id.*).

Respondent requests that the court strike Petitioner's reply and exhibits, on the ground that this federal court is limited to the record which was before the state court, pursuant to Cullen v. Pinholster, 563 U.S. 170, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011) (*see* ECF No. 27).

In response to Respondent's motion to strike, Petitioner contends that even if the court ignores the proffered evidentiary materials he submitted with his reply, as well as the arguments relating to those materials, his petition and reply demonstrate

that he has satisfied § 2254(d) (*see* ECF No. 29).  Therefore, the court may consider the proffered evidentiary material and take additional evidence at an evidentiary hearing (*see id.*).

Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts provides that Respondent must attach to the answer (1) parts of the transcript that Respondent considers relevant; (2) any brief that Petitioner submitted in a state appellate court contesting the conviction or sentence, or contesting an adverse judgment or order in a post-conviction proceeding; (3) any brief that the State submitted in a state appellate court relating to the conviction or sentence; and (4) the opinions and dispositive orders of the state appellate court relating to the conviction or the sentence.  28 U.S.C. § 2254 Rule 5(c), (d).  Rule 5 further provides Petitioner an opportunity to submit a reply to Respondent's answer.  *Id.*, Rule 5(e).

Rule 7 provides that

> [i]f the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition. . . .  The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge.  Affidavits may also be submitted and considered as part of the record.

28 U.S.C. § 2254 Rule 7(a)–(b).

In <u>Pinholster</u>, the Supreme Court held that "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court."  563 U.S. at 185. "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review."  *Id.* <u>Pinholster</u> presents "a clear, emphatic rule:  if a state court has adjudicated the claim on the merits, then a petitioner must satisfy § 2254(d)(1) based only on the record before that state court."  <u>Pope v. Sec'y, Fla. Dep't of Corr.</u>, 752 F.3d 1254, 1263 (11th Cir. 2014), *cert. denied sub nom* <u>Pope v. Jones</u>, 135 S. Ct. 1550, 191 L. Ed. 2d 643 (2015).  Thus, as a general rule, district courts may not expand the record or conduct evidentiary hearings to supplement the existing state court record under 28 U.S.C. § 2254(d).  *See* <u>Frazier v. Bouchard</u>, 661 F.3d 519, 528 (11th Cir. 2011) (limiting review under § 2254(d)(1) to record before state court, and refusing to consider expanded record presented to district court); <u>Moore v. Mitchell</u>, 708 F.3d 760, 780–81 (9th Cir. 2013) (federal habeas court could not consider additional evidence not before state courts, even though parties jointly moved to expand the record); <u>Ballinger v. Prelesnik</u>, 709 F.3d 558, 561 (6th Cir. 2013) (district courts are precluded from conducting evidentiary hearings to supplement existing state court records when a state court has issued a decision on the merits with respect to the claim at issue);

Brown v. Wenerowicz, 663 F.3d 619, 629 (3d Cir. 2011) (finding Pinholster controlling and holding that the district court erred in conducting an evidentiary hearing).  Likewise, review of a claim under § 2254(d)(2) is expressly limited to "evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

Additionally, although § 2254(e)(2) permits federal habeas courts to take new evidence in an evidentiary hearing, that provision applies only when the petitioner has either satisfied § 2254(d), or the federal court is deciding claims that were not adjudicated on the merits in state court.  See Pinholster, 563 U.S. at 185–86.

Here, the First DCA adjudicated Petitioner's Sixth Amendment claim on the merits.  Therefore, Petitioner must satisfy § 2254(d) in order for the court to even consider whether expansion of the record or an evidentiary hearing is permissible; in other words, he must first show that the First DCA's adjudication of his claim was contrary to or an unreasonable application of clearly established federal law, or was based upon an unreasonable determination of the facts.

The state court record reveals the following facts as relevant to Petitioner's Sixth Amendment claim.  Petitioner was arrested on May 18, 2011, and posted bond (see Ex A at 23).  He retained counsel, Attorney Kim Skievaski, who represented him at a hearing on June 9, 2011, the same day that Petitioner was formally charged (see

Ex. A at 1 and Docket Sheet).  On August 15, 2011, Attorney Skievaski filed a motion

to withdraw, and on August 30, 2011, he filed a stipulation signed by him and

Petitioner agreeing that the court should permit him to withdraw (Ex. B at 549).  The

trial court held a hearing on counsel's motion on September 6, 2011 (*id.* at 552–59).

At that hearing, Petitioner advised the court that he agreed with the court's permitting

Attorney Skievaski to withdraw (*id.*).  Attorney Skievaski advised the court that he

"put [Petitioner] in touch with a couple of other lawyers" (*id.* at 553).  Skievaski also

advised that he did not believe that Petitioner financially qualified for court-appointed

counsel (*id.*).  The court asked Petitioner whether he intended to hire an attorney, and

Petitioner responded, "I'm going to try." (*id.* at 554).  The court then asked whether

Petitioner intended to request that the court appoint counsel to represent him, and

Petitioner responded, "If I can't retain a lawyer then that's what I'll do." (*id.*).  The

court advised Petitioner that he had the right to have court-appointed counsel represent

him if he was "indigent" as defined by Florida law (*id.*).  The court inquired as to

whether Petitioner wished to apply for court-appointed counsel, and Petitioner

answered in the affirmative (*id.* at 556).  Petitioner completed an Application for

Criminal Indigent Status (*id.* at 551).  On the application, Petitioner stated he had

"take home" or net income of $4,250.00 per month (*id.*).  He stated he had $500.00

in cash, $500.00 in a bank account, and $1,200.00 in savings (*id.*).   Petitioner stated

that he had total liabilities and debts of $2,800.00 (*id.*).   Petitioner stated he posted his

own bond in the amount of $1,000.00 cash (*id.*).   The clerk of court determined that

Petitioner was not indigent, and advised the court of the determination (*id.* at 551,

557).[6]  The trial court reviewed the Application and advised Petitioner that he did not

qualify for court-appointed counsel (*id.* at 557).   The court asked Petitioner how long

it would take him to retain counsel, and Petitioner responded "the next couple of

---

[6] The Florida Legislature implemented the Sixth Amendment's requirement that courts appoint counsel for defendants who are "too poor to hire a lawyer" in Florida Statutes Chapter 27. *See* Fla. Stat. § 27.40.  Florida law provides that a person seeking appointment of a public defender based upon an inability to pay, must apply to the clerk of court for a determination of "indigent status," using an application form approved by the Florida Supreme Court. *See* Fla. Stat. § 27.52(1). Florida law requires the clerk of the court to determine whether an applicant seeking appointment of a public defender is "indigent" based upon the information provided in the application and the criteria prescribed in § 27.52(2).  If the clerk of the court determines that the applicant is not "indigent," and the applicant seeks review of the clerk's determination, the statute requires the court to make a final determination of "indigent status," by reviewing the information provided in the application against the criteria prescribed in § 27.52(2), and by considering additional factors set forth in § 27.52(4). *See* Fla. Stat. § 27.52(4).  Those factors are:

    1. Whether the applicant has been released on bail in an amount of $5,000 or more.

    2. Whether a bond has been posted, the type of bond, and who paid the bond.

    3. Whether paying for private counsel in an amount that exceeds the limitations in s. 27.5304, or other due process services creates a substantial hardship for the applicant or the applicant's family.

    4. Any other relevant financial circumstances of the applicant or the applicant's family.

Fla. Stat. § 27.52(4).

Case No.:  3:15cv21/MCR/EMT

weeks" (*id.*).   The court set a status conference for September 16, 2011 (*id.* at 557–58).

At the status conference on September 16, 2011, the court inquired of Petitioner whether he intended to retain counsel or represent himself (Ex. B at 560–63). Petitioner responded that he planned to hire counsel (*id.* at 562).  The court set another hearing for October 6, 2011 (*id.* at 562–63).

At the hearing on October 6, the court asked Petitioner whether he had retained counsel (Ex. A at 24–34).  Petitioner responded that he was not financially able to do so (*id.* at 25–26).  The court verified that Petitioner had previously applied for court-appointed counsel but did not financially qualify (*id.* at 26).  Petitioner advised the court that when he completed the application for indigent status, he did not include the amount he paid in rent (*id.*).  The trial court inquired of Petitioner as to his income and assets (*id.* at 28–32).  The court asked whether Petitioner had considered finding part-time employment to earn money to hire counsel, and Petitioner responded that he had a back condition and was taking prescription medication that affected his memory and ability to drive (*id.* at 30).  The court advised Petitioner that he may have to sell personal property or find part-time employment to raise funds to retain counsel, and Petitioner indicated he understood that he may have to do those things (*id.* at 31–32).

The court determined that Petitioner was not waiving his right to counsel, but that Petitioner did not financially qualify for court-appointed counsel (*id.* at 32).  The court set a hearing for November 1, 2011 (*id.* at 33).

At the hearing on November 1, 2011, Petitioner stated he was "still working on" hiring counsel, that he desired to be represented by counsel, and that he intended to hire counsel (Ex. B at 565–70).  The court set a status conference for November 10, 2011, and told Petitioner that he expected to hear that Petitioner either met with an attorney or scheduled an appointment to meet with one (*id.*).

At the status conference on November 10, 2011, Petitioner advised the court that he had not been able to hire counsel (Ex. A at 35–47).  The court inquired of Petitioner as to whether his net income was still $4,250.00 per month, and Petitioner verified that it was (*id.* at 39).  The court inquired as to whether Petitioner had considered seeking employment so that he had more funds to hire counsel, and Petitioner responded, "I am going to have to try" (*id.* at 40).  The court asked Petitioner whether he had made an effort to hire counsel, and Petitioner responded affirmatively (*id.* at 40–41).  The court informed Petitioner that he did not financially qualify for court-appointed counsel, and that if he did not retain an attorney, he would

be required to represent himself (*id.* at 41).  Petitioner stated that he understood (*id.*).

The court set the case for a "docket day" on January 3, 2012 (*id.* at 44).

On January 3, 2012, Petitioner advised the court that he had not retained

counsel (Ex. B at 571–76).  The court advised Petitioner that he did not qualify for

court-appointed counsel, and that if he did not retain an attorney, he would have to

represent himself (*id.* at 572–74).  Petitioner stated that he understood, and that he was

prepared to represent himself (*id.* at 573).  The court again encouraged Petitioner to

"do whatever you have to do to make the financial arrangements necessary" to hire

counsel (*id.* at 574).  The court set the case for another "docket day" on February 28,

2012 (*id.* at 575).

On February 28, 2012, the court again advised Petitioner that he did not qualify

for court-appointed counsel (Ex. B at 577–84).   The court acknowledged that

Petitioner stated his desire to be represented by counsel, but confirmed that Petitioner

had not retained an attorney (*id.* at 578).  Petitioner requested "just a little bit longer"

to try to retain counsel (*id.* at 580).  He stated that four days prior, he applied for a

signature (unsecured) loan and was waiting to hear whether it was approved (*id.* at

579–80).  Petitioner stated that if the loan was approved, he would be financially able

to hire an attorney (*id.* at 580).  Petitioner stated that he had spoken with several

attorneys, and they required $15,000.00 to $20,000.00, which "I just don't have" without the signature loan (*id.* at 580–81).  The court set a status conference for March 8, 2012 (*id.* at 582).

On March 8, 2012, Petitioner advised the court that he had not hired an attorney (Ex. B at 585–91).  The court noted that the case had been pending for nine months, and that Petitioner had adequate time to hire an attorney (*id.* at 587).  The court set the next hearing for April 24, 2012 (*id.* at 590).

On April 24, 2012, Petitioner affirmed that he had not retained counsel (Ex. A at 49–55).  Petitioner stated that he was not choosing to proceed without counsel (*id.* at 51).  He acknowledged that the court had determined he was not indigent, but stated that he desired legal representation (*id.*).  He stated he was not financially able to hire an attorney "right now," and requested that the court appoint a public defender (*id.* at 51–52).  The court confirmed that Petitioner's net income was still $4,250.00 per month, and determined that Petitioner's income was such that he did not qualify for court-appointed counsel (*id.* at 52–53).  The prosecutor requested that the court set a hearing to conduct a full inquiry into Petitioner's financial circumstances, and the prosecutor provided copies of DiBartolomeo v. State, 450 So. 2d 925 (Fla. 4th DCA 1984) and Mansfield v. State, 16 So. 3d 302 (Fla. 5th DCA 2009), to the court and

Petitioner (*id.* at 52–54, 57).  The court set a hearing for May 3, 2012, to conduct a complete inquiry into Petitioner's financial circumstances (*id.* at 54).

On May 3, 2012, the trial court held a hearing solely for the purpose of inquiring of Petitioner regarding his financial circumstances to determine whether he was indigent and thus entitled to appointment of counsel (Ex. A at 56–81).  The court reviewed the application for indigent status that Petitioner previously filed, which indicated monthly net income of $4,250.00, monthly liabilities and expenses of $2,800.00, and $2,200.00 in cash and bank accounts (Ex. B at 551).  The court inquired regarding Petitioner's income, and Petitioner responded that he was "medically retired" from the Marine Corps. (Ex. A at 58–59).  Petitioner stated that he received $2,750.00 monthly as military retirement, and $1,550.00 monthly from the Veterans' Administration as disability, for a total of $4,300.00 per month (*id.*).  Petitioner testified that $4,200.00 was the "net" amount he received, after deductions for taxes, medical insurance, and the like (*id.* at 60–62).  Petitioner testified that he had not yet filed his income tax return, but he did not anticipate either a tax liability or refund (*id.* at 61–62).  Petitioner testified that he was married and resided with his wife (*id.* at 62).  He testified that they did not have any minor children living with them (*id.*).  Petitioner testified that his wife was employed and contributed income

toward household expenses (*id.*).  He testified that her monthly net income was $1,500.00 (*id.* at 67).  Petitioner testified that he and his wife rented the home in which they lived for $800.00 per month (*id.* at 63).  He testified that he was making payments on three vehicles, one was his, the second was his wife's, and the third was a car he bought for his adult son (*id.*).  He testified that he made monthly payments on the vehicles in the amounts of $302.00, $360.00, and $184.00, respectively (*id.* at 64).  Petitioner testified that he made monthly payments on a personal loan in the amount of $5,000.00, which he had obtained after the homicide occurred (March 26, 2011) but before he was arrested (on May 18, 2011) (*id.* at 64–65).  Petitioner testified that the purpose of the loan was not in anticipation of defending the criminal charges, but to help his adult son relocate to Florida from Texas (*id.* at 65).  Petitioner testified that he was still repaying the signature loan, and when the court inquired as to whether Petitioner's son was repaying him, Petitioner responded, "Not yet . . .  He just got a job" (*id.*).  Petitioner testified that his adult son lived with Petitioner and his wife but did not pay rent or contribute income to the monthly expenses (*id.* at 65–67).

The court asked Petitioner whether he had prepared a summary or statement of monthly expenses (Ex. A at 66).  Petitioner responded that he "started one," but "didn't think to bring it" (*id.*).  The court inquired as to whether Petitioner had saved

any money (*id.*).  Petitioner responded that he saved approximately $150.00 per month (*id.* at 66–67).  The court noted that on the application for indigent status (which Petitioner completed seven months prior, on September 19, 2011), Petitioner stated that he had $1,200.00 in savings, $500.00 in cash, and $500.00 in a bank account, and the court asked how much Petitioner currently had in cash and bank accounts (*id.* at 68).  Petitioner stated he had approximately $1,000.00 (*id.*).  The court inquired as to whether Petitioner had considered selling assets (*id.* at 66).  Petitioner responded that attorneys were wanting $15,000.00–20,000.00 "up front,"  and that he did not have enough personal property to sell to pay that amount (*id.* at 66–67).

The court asked whether Petitioner was claiming that a disability prevented him from working, and Petitioner responded that he had three operations on his back, and suffered from chronic, lower back pain (Ex. A at 68).  The court inquired as to whether Petitioner had attempted to work at a job that did not require him to place any "load" on his back, and Petitioner responded that he had worked at Wal-Mart, but quit nearly five years ago because "the pain was starting to get a little bit too much" (*id.* at 68–69).

The court inquired as to whether Petitioner had posted bond, the type of bond, and who paid it, and Petitioner responded that he posted a cash bond in the amount of

$1,000.00 (Ex. A at 67–68).  The court inquired as to whether Petitioner's wife would still receive the military and VA income in the amount of $4,700.00 per month if Petitioner was convicted, and Petitioner responded affirmatively (*id.* at 69).  The court asked whether Petitioner discussed with any attorney the possibility of pledging that amount, or a portion of it, as installment payments (*id.*).  Petitioner responded that one of the lawyers he spoke to indicated that he would accept monthly installments in the amount of $2,000.00 per month (*id.* at 69–70).  The court asked Petitioner how many attorneys he consulted, and Petitioner responded that he had spoken with four attorneys (*id.* at 71).  The prosecutor noted that the telephone book was "full of attorneys" (*id.*).  The following exchange then occurred between the court and Petitioner:

> THE COURT:  . . . I'm not trying to be too harsh on you.
>
> THE DEFENDANT:  Oh, I understand.
>
> THE COURT:  But it's been a year now.  And understanding that, do you feel like you've done as much as you can possibly do to try and find a way to get an attorney to represent you?
>
> THE DEFENDANT:  <u>I'm sure there are still other options I can look at also.</u>
>
> THE COURT:  Well, here's the problem we've got.  Just because we have a public defender's office doesn't mean that they—that the taxpayers of the State of Florida are obligated to provide representation

to every single resident of the State of Florida at taxpayer expense.  And so there are guidelines and qualifications.

And I understand that it's difficult and it's problematic, but you know, sometimes drastic measures have to be taken.  You know, selling all the furniture in the house, selling the vehicles and buying a bicycle to ride to work.  You know, and I may be sounding a little bit extreme or facetious here, but—and I understand that a household income of 5,700 per month doesn't make one wealthy, but that is 64,000—$74,000 a year to meet living expenses and to potentially save money to hire an attorney.

And your rent is not terribly unreasonable, 800 per month.  And you know, with that level of rent, I mean, there are people—there are families that live on less than $2,000 a month.  And if you were doing that, you would be saving $3,000 a month or more.

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And could have [sic] and if you had done that for the first five months of this case, you would have had $15,000 in pocket to go hire an attorney.  I think I have to conclude that you haven't done the things you could do and needed to do in order to obtain the money that the attorneys want to require of you.  And you know, I understand, that it's not necessarily your stated desire to be your own attorney in court, but—but you know, just because someone chooses not to do the things they need to do if they have the ability to retain counsel, then it doesn't mean that I'm obligated to appoint the public defender—

THE DEFENDANT:  I understand, Your Honor.

THE COURT:   —to represent them.   And I mean, it's an extremely serious case.

THE DEFENDANT:  Yes, Your Honor.

> THE COURT:  DUI trials have certain technical aspects of them
> that make it make it, one [sic], where it's difficult to represent oneself.
> But you know, I feel like I've given you ample time to save the money,
> to put the money aside or to make arrangements.  You have had ample
> opportunity since you were notified that you did not qualify to be
> represented by the public defender.  And you know, we are just going to
> have to go forward.

(Ex. A at 72–74) (emphasis added).  The court set the case for trial the following week

(*id.* at 79).  Petitioner asked if the court would continue the trial date for at least two

weeks (*id.*).  The court asked if there was any reason that Petitioner would not be

prepared for trial the following week (*id.*).  Petitioner responded, "Well, just like the

prosecutor said, there is [sic] tons of lawyers in the phone book" (*id.*).  The court

denied Petitioner's request for a continuance (*id.* at 79–80).

Jury selection was held on May 7, 2012, and Petitioner's trial was held May 11,

2012.  Petitioner retained counsel for sentencing.  After sentencing, Petitioner's

counsel filed a motion to withdraw and appoint the public defender's office (Ex. A at

474).  The trial court held a hearing on October 18, 2012, to determine whether

Petitioner qualified for appointment of counsel (Ex. A at 479–82, 489, Ex. B at

638–67).  Petitioner presented a financial affidavit reflecting his monthly gross

income, monthly deductions, average monthly expenses, and monthly payments on

liabilities, and he also provided testimony regarding those circumstances (Ex. A at

483–88).  Following the hearing, the court found that Petitioner was insolvent and unable to employ counsel for the prosecution of an appeal (*id.* at 491).

Petitioner contends he is entitled to habeas relief under § 2254(d)(1).  He argues that the state court's rejection of his Sixth Amendment claim was an unreasonable application of Gideon (ECF No. 24 at 2).

Petitioner can satisfy the "unreasonable application" prong of § 2254(d)(1) only by showing that "there was no reasonable basis" for the First DCA's decision. Pinholster, 563 U.S. at 188 (citing Richter, 562 U.S. at 98).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Richter, 562 U.S. at 101 (citation omitted).  Under § 2254(d), "a habeas court must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court."  Pinholster, 563 U.S. at 188  (citing Richter, 562 U.S. at 102).  After a thorough review of the state court record, the undersigned concludes that Petitioner has failed to meet this high threshold.

The Sixth Amendment provides that in all criminal prosecutions, "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defen[s]e." U.S. Const. amend. VI.  This constitutional right to counsel encompasses the right to appointed counsel for defendants who are "too poor to hire a lawyer." Gideon v. Wainwright, 372 U.S. 335, 339–41, 344 (1963).  The right to counsel does not depend upon a request by the defendant. *See* Brewer v. Williams, 430 U.S. 387, 404, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977) (citing Carnley v. Cochran, 1962, 369 U.S. 506, 513–16, 82 S. Ct. 884, 8 L.Ed.2d 70 (1962)).  Absent special circumstances, the fact that a defendant appears without, or having discharged, counsel, places at least a burden of inquiry on the court. *See* Brewer, *supra*; Carnley, *supra*; Johnson v. Zerbst, 304 U.S. 458, 465, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938) ("The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel."); United States v. Harris, 707 F.2d 653, 662 (2d Cir. 1983); United States v. Harlan, 696 F.2d 5, 6 (1st Cir. 1982); United States v. Cohen, 419 F.2d 1124, 1127 (8th Cir. 1969). There is no Supreme Court precedent establishing the substantive or procedural

requirements of the inquiry that a state trial court must make in determining whether a criminal defendant is "too poor to hire a lawyer."[7]

The state court did not ignore its duty to inquire into Petitioner's financial ability to hire counsel.  The court notified Petitioner on April 24, 2012, that on May 3, 2012, it would hold held a hearing to inquire as to his financial ability to hire counsel.  This provided Petitioner an opportunity to garner information about not only his financial circumstances, but the financial requirements of attorneys who provided representation is cases like his.  At the hearing on May 3, 2012, the court conducted an inquiry into Petitioner's financial circumstances and his efforts to hire counsel.  Petitioner had a full and fair opportunity to present evidence on these issues.

Petitioner has not shown that no fairminded jurist could have concluded, as the three Judges of the Florida First DCA did, that he failed to carry his burden of showing that the trial court violated his Sixth Amendment right to counsel.  Petitioner has not shown that the evidence on this question is so one-sided in his favor that the answer is, as the Supreme Court has phrased it, "beyond any possibility for fairminded disagreement."  Harrington, 131 S. Ct. at 787.  He has not shown that the Florida First

---

[7] The federal Criminal Justice Act, 18 U.S.C. § 3006A, establishes the framework for ensuring that federal defendants who are financially unable to afford counsel are provided counsel as required by the Sixth Amendment. The federal statute requires federal courts to make "an appropriate inquiry" into whether the defendant is financially unable to retain counsel. See 18 U.S.C. § 3006A(b).

DCA's determination of the Sixth Amendment issue was so unjustified that it "was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786–87; *accord* <u>Bobby v. Dixon</u>, — U.S. —, 132 S. Ct. 26, 27, 181 L. Ed. 2d 328 (2011) (per curiam); *see also* <u>Ray v. Ala. Dep't of Corr.</u>, — F.3d —, 2016 WL 66534, at *5 n.5 (11th Cir. Jan. 6, 2016); <u>Holsey v. Warden, Ga. Diagnostic Prison</u>, 694 F.3d 1230, 1258 (11th Cir. 2012).  Therefore, Petitioner failed to satisfy § 2254(d)(1).

Petitioner additionally contends he is entitled to habeas relief under § 2254(d)(2), because the state court's rejection of his Sixth Amendment claim was based upon an unreasonable determination of the facts.  Petitioner argues that the process that the trial court employed to determine Petitioner's indigence was "insufficiently in-depth and incorrect in its reasoning and final outcome" (ECF No. 24 at 5).  He argues, "[t]he cursory financial screening process used by the trial court was not reasonable and sought insufficient financial date from Alamia in order for the trial court to make a reliable determination" (*id.*).

Petitioner has not pointed to any evidence in record before the trial court (which is the only evidence which may be considered at this stage), that clearly and convincingly demonstrates that the trial court's factual finding, that Petitioner was

financially able to hire counsel, was unreasonable.[8]  The evidence before the court

showed that Petitioner and his wife had a combined net monthly income of $4,800.00.

Petitioner's application for indigent status stated that his liabilities and debts totaled

$2,800.00.   Petitioner testified that he and his wife saved only $150.00 of their

$4,800.00 income each month, yet Petitioner provided no evidence documenting their

expenditures of $4,650.00 per month.  Petitioner admitted that had been financially

supporting his adult son for over a year (during the entire pendency of the criminal

case), including making monthly payments for his son's car and payments on the

signature loan he had obtained for his son's benefit, even though his son was able to

work and had recently become employed.  Petitioner admitted that he knew that

attorneys were wiling to accept installment payments for representation, yet he had

consulted with only four attorneys during the pendency of the case, despite the fact

that he was not employed and thus had the time and ability to consult with additional

attorneys.  Petitioner admitted that he had $1,000.00 immediately available; that he

could pledge the $1,000.00 cash bond he posted; and that he could pledge at least part

of his $4,300.00 monthly income (at least some of which he would receive even if he

---

[8] The court notes that during the pre-trial proceedings, Petitioner did not inform the trial court of specific information which he later presented at the post-trial hearing on the issue of his eligibility for court-appointed counsel on appeal.

was convicted).  Petitioner even admitted he was "sure" that there were other options he could investigate to obtain legal representation.  In light of the evidence with which the state court was presented, the state court's factual finding, that Petitioner was financially able to retain counsel, was not unreasonable.  Therefore, Petitioner has not demonstrated he is entitled to relief under § 2254(d)(2).  *See, e.g.*, Tokarcick v. Burns, No. 12-253J, 2015 WL 3480333, at *7 (W.D. Penn. May 29, 2015) (unpublished but recognized for persuasive authority) (petitioner failed to rebut presumed correctness of state court's factual determination that he was not indigent; state court record supported state court's finding that defendant was not indigent, because it showed that defendant apparently owned real property, albeit real property with a lien or mortgage on it); Howell v. Rubitschun, No. 04-CV-71975, 2005 WL 2319012, at *4 (E.D. Mich. Sept. 20, 2005) (unpublished) (state court's decision, that petitioner had sufficient means to retain an attorney, was reasonable based upon evidence presented to state court, and petitioner failed to rebut presumption of reasonableness with clear and convincing evidence).  *Cf.* Kitchens v. Smith, 401 U.S. 847, 848, 91 S. Ct. 1089, 28 L. Ed. 2d 519 (1971) (state court's finding that petitioner "did not testify . . . that because of his poverty, or for any other reason, he was unable to hire a lawyer" was

unreasonable where petitioner testified to state court that he "didn't have any money" and "didn't have a lawyer").

Petitioner failed to demonstrate that the First DCA's adjudication of his Sixth Amendment claim was contrary to or an unreasonable application of clearly established federal law, or that the state court's adjudication was based upon an unreasonable determination of the facts.  Therefore, he is not entitled to federal habeas relief.  *See, e.g.*, Douglas v. Hendricks, 236 F. Supp. 2d 412, 429 (D.N.J. 2002) (state court's denial of petitioner's claim that he was denied his Sixth Amendment right to counsel during 5-month period when public defender's office withdrew from representation, involved neither an unreasonable application of clearly established federal law nor an unreasonable determination of the facts, where state court record showed that public defender's office made reasonable investigation into petitioner's financial condition before withdrawing from representation, and during that investigation, petitioner did not inform public defender's office of specific information which state trial court later considered in determining that petitioner was entitled to appointed counsel); Barrett v. Meeks, No. Civ S-97-1106/LKK/JFM/P, 2006 WL 3300984, at *15–19 (E.D. Cal. Nov. 14, 2006) (unpublished) (state appellate court's decision, that petitioner was not denied right to counsel, was not contrary to

Supreme Court precedent nor an unreasonable application of federal law or the facts; trial court held in camera proceeding, at which petitioner testified he had monthly income of $3,000; although petitioner sent a letter to 81 attorneys, he failed to meet personally with any or personally attempt to persuade them to work out financial arrangements; petitioner acknowledged that he increased his cash flow by filing for bankruptcy, but he failed to involve the bankruptcy trustee in his efforts to obtain financing to retain a lawyer; petitioner was free on his own recognizance; and petitioner failed to present sufficient evidence to the trial court to support his professed inability to hire counsel, yet he kept insisting he was unable to afford his own attorney and refused to retain counsel despite ample opportunity and sufficient means to do so). *Cf.* Jones v. Spitzer, No. 01CIV9754(HB)(GWG), 2005 WL 167605, at *10 (S.D.N.Y. Jan. 25, 2005) (unpublished) (pre-Pinholster case in which federal court determined that state court's factual determination, that petitioner was not entitled to appointed counsel, was unreasonable in light of financial materials submitted by petitioner to federal habeas court, which were not presented to the state court; and determining that state court's refusal to hold a hearing on, or otherwise examine, petitioner's financial status was contrary to clearly established federal law and objectively unreasonable).

IV.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of  new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That Petitioner's "Motion to Expand the Record and Request for Evidentiary Hearing" (ECF No. 30) be **DENIED**.

2.    That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

3.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 3rd day of February 2016.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**